```
              IN THE UNITED STATES DISTRICT COURT
           FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
                        WESTERN DIVISION


DAIMLER TRUCKS NORTH AMERICA LLC;
WESTERN STAR TRUCK SALES, INC.; and
DETROIT DIESEL CORPORATION                              PLAINTIFFS

VS.                        CIVIL ACTION NO: 5:15-cv-30(DCB)(MTP)

McCOMB DIESEL, INC., and
FRANCISCO JOSE MONTALVO                                 DEFENDANTS
```

ORDER

This cause is before the Court on plaintiffs Daimler Trucks North America LLC ("Daimler") and Western Star Truck Sales, Inc. ("Western Star")'s motion for summary judgment regarding right of first refusal (docket entry 91), on plaintiff Detroit Diesel Corporation ("Detroit Diesel")'s motion for summary judgment regarding right to withhold consent (docket entry 92), and on defendants McComb Diesel, Inc. ("McComb Diesel") and Francisco Montalvo ("Montalvo")'s motion for summary judgment (docket entry 94). Having carefully considered the motions and responses, the memoranda and the applicable law, and being fully advised in the premises, the Court finds as follows:

Plaintiff Western Star is a manufacturer of over-the-road heavy trucks, which contracts with authorized dealerships to sell and service its vehicles. Defendant McComb Diesel and plaintiff Western Star are parties to a contract whereby McComb Diesel is authorized to sell and service Western Star trucks from a dealership in Magnolia, Mississippi. McComb Diesel owns three

subsidiaries: Fiber Plus, LLC ("Fiber Plus"), Harvest Haul, Inc. ("Harvest Hall"), and Magnolia Motors. According to the plaintiffs, none of these subsidiaries sell or service Western Star vehicles. Instead, Fiber Plus and Harvest Haul provide commercial trucking services to the forestry industry using fleets of trucks that they own, and Magnolia Motors provides financing and leasing services. On October 31, 2014, McComb Diesel, Fiber Plus, Harvest Haul, and Magnolia Motors entered into an Asset Purchase Agreement ("APA") with Old River of McComb ("Old River") to sell all four companies to Old River in a package sale for a lump sum of slightly less than six million dollars.

Western Star alleges that when it learned of the proposed sale, it attempted to exercise a right of first refusal contained in the APA between Western Star and McComb Diesel. Further, Western Star alleges that the right of first refusal covers the "dealership business or assets" operated by McComb Diesel, and does not cover McComb Diesel's subsidiaries' businesses. Western Star states that McComb Diesel, instead of conveying its "dealership business or assets" to Western Star as required by the agreement, insisted that Western Star also purchase the subsidiaries that are unrelated to its "dealership business." This suit ensued.

Plaintiffs Daimler and Western Star's motion for summary judgment raises three legal issues:

(1) Did McComb Diesel's attempt to sell the dealership and

unrelated companies as a package sale trigger Western Star's right of first refusal?

(2) If Western Star's right of first refusal was triggered, did Western Star timely exercise its right of first refusal under Mississippi law?

(3) If Western Star's right of first refusal was triggered and timely exercised, what property must McComb Diesel convey to Western Star?

The plaintiffs contend that McComb Diesel's proposed package sale did not trigger Western Star's right of first refusal since McComb Diesel's intent to sell encumbered and unencumbered assets does not show a manifested intent to convey the "dealership business or assets" alone. Alternatively, Western Star asserts that it timely exercised its right of first refusal, that Western Star and Daimler are entitled to summary judgment on their contract-based cause of action for specific performance, and that McComb Diesel is required to convey to Western Star the "dealership business or assets" only.

McComb Diesel responds that the plaintiffs' right of first refusal was triggered by the APA between McComb Diesel and Old River.  See Western Star Agreement XIV(B)(3).  Further, McComb Diesel contends that the right of first refusal was triggered because the terms of the APA were commercially reasonable.  See West Tex. Transmission, L.P. v. Enron Corp., 907 F.2d 1554, 1563

3

(5th Cir. 1990)("[T]he owner of property subject to a right of first refusal remains master of the conditions under which he will relinquish his interest, as long as those conditions are commercially reasonable, imposed in good faith, and not specifically designed to defeat the preemptive rights.").

McComb Diesel also asserts that the APA was not designed to destroy Western Star's right of first refusal, that it was presented to Western Star for its review and option to purchase, and that it was the result of good faith and arm's length negotiations between Lee White of Old River and Montalvo.[1] According to the defendant, Western Star attempted to exercise its right of first refusal "to acquire only the assets of McComb Diesel ... [t]hen, when it realized that Harvest Haul and Fiber Plus were assets of McComb Diesel, Western Star purported to exercise its right of first refusal to acquire only the 'assets that are related to and necessary for the operation of the dealership in Magnolia, Mississippi.'"

McComb Diesel further argues that because the business operations of McComb Diesel, Harvest Haul, Fiber Plus and Magnolia Motors are completely integrated and generate profit and value for each other, it is commercially reasonable for McComb Diesel to insist that the assets be purchased together, and to insist that Western Star's right of first refusal include all assets. McComb

---

[1] Montalvo is the sole owner of McComb Diesel.

Diesel also asserts that if the Court finds that Western Star timely exercised its right of first refusal, the Court should order Western Star to perform its duty to purchase McComb Diesel's assets for $5,955,729.00, the amount offered by Old River in the APA.

Plaintiff Detroit Diesel[2] also moves for summary judgment, asserting a right to withhold consent to defendant McComb Diesel's attempted sale of its Detroit Diesel dealership to Old River. Plaintiffs Daimler and Western Star on one hand, and defendants McComb Diesel and Montalvo on the other, are parties to a Dealer Sales and Service Agreement ("DSSA").  Under the terms of the DSSA, McComb Diesel operates a Western Star dealership.  Complementary to the DSSA, Detroit Diesel and McComb Diesel are parties to a Direct Dealer Agreement ("DDA"), pursuant to which McComb Diesel sells and services certain Detroit Diesel products, namely certain types of diesel engines.  The DDA sets forth the responsibilities of the parties, including the sale of new parts and equipment manufactured by Detroit Diesel.  The responsibilities of McComb Diesel include "providing prompt, efficient and courteous service to owners and users of the [Detroit Diesel] Products, ... actively and regularly pursu[ing] Product sales and service functions" and "perform[ing] all service operations in a good and workmanlike manner."  DDA, Art. 7.1.1, 7.1.2.

---

[2] Plaintiffs Western Star and Detroit Diesel are both wholly owned subsidiaries of plaintiff Daimler.

Detroit Diesel alleges that on November 4, 2014, McComb Diesel provided Western Star with an executed agreement for the proposed sale, and that defendant Montalvo sought Detroit Diesel's consent for the proposed sale. Further, Detroit Diesel avers that during the evaluation process, Daimler discovered that Old River's primary business was sales and services of another competing brand, Volvo, and Daimler informed Montalvo that it preferred not to have dealers with competing brands be candidates for expansion. Following a meeting at which Daimler expressed to Montalvo its concern over the extent of Old River's Volvo dealerships, Western Star advised McComb Diesel of its intention to exercise its right of first refusal to purchase the dealership.

Detroit Diesel seeks summary judgment in the form of a declaratory ruling that it had the right to withhold consent to McComb Diesel's proposed sale of its Detroit Diesel dealership, and that its exercise of that right was not unreasonable. In response, McComb Diesel states that Detroit Diesel did not participate in Daimler's review of the APA, did not conduct an independent review, and refused to consent to the APA without offering any explanation, all of which McComb Diesel argues was arbitrary and unreasonable. Detroit Diesel has filed a motion to strike McComb Diesel's response as untimely.

Defendant McComb Diesel has also filed a motion for summary judgment against the plaintiffs, seeking judgment in its favor on

the following claims as put forward by the plaintiffs:

(1) that Western Star's right of first refusal was not triggered by the execution of the APA, or

(2) that, in the alternative, Western Star's right of first refusal was triggered by the execution of the APA, but Western Star is not required to purchase all of the assets covered by the APA, and

(3) Detroit Diesel has grounds to terminate the Detroit Diesel Agreement, because McComb Diesel allegedly failed to seek Detroit Diesel's approval of the sale to Old River.

McComb Diesel contends that there are no genuine issues of material fact as to any of these three claims by the plaintiffs, and that it is entitled to judgment as a matter of law.

McComb Diesel has also brought the following counterclaims against the plaintiffs, seeking declaratory and injunctive relief:

(1) that McComb Diesel has a right to close the APA, because Western Star failed to timely and/or effectively exercise its right of first refusal, and failed to act reasonably and in good faith by refusing to approve Old River as a Western Star dealer, or

(2) that, in the alternative, Western Star timely exercised its right of first refusal and is obligated to purchase all of the assets covered by the APA for the price agreed to by Old River and McComb Diesel, and

(3) Detroit Diesel violated Miss. Code Ann. § 63-17-73(d)(I)

by threatening to terminate the Detroit Diesel Agreement without due cause or good faith.

McComb Diesel alleges that there are no genuine issues of material fact as to the first two counterclaims, and that it is entitled to judgment as a matter of law.

Federal Rule of Civil Procedure 56(a) provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). If the movant meets this burden, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994).

To rebut a properly supported motion for summary judgment, the opposing party must show, with "significant probative evidence," that there exists a genuine issue of material fact. Hamilton v. Seque Software, Inc., 232 F.3d 473, 477 (5th Cir. 2000). "A genuine dispute of material fact means that evidence is such that a reasonable jury could return a verdict for the nonmoving party." Royal v. CCC & R Tres Arboles, L.L.C., 736 F.3d 396, 400 (5th Cir. 2013)(quotation omitted). However, if the evidence is merely colorable, or is not significantly probative, summary judgment is appropriate. Cutting Underwater Techs. USA, Inc. v. ENI U.S. Operating Co., 671 F.3d 512, 516 (5th Cir. 2012)(citing Anderson v.

Liberty Lobby, Inc., 477 U.S. 242, 249 (1986)).  In deciding whether summary judgment is appropriate, the Court views facts and inferences in the light most favorable to the nonmoving party.  RSR Corp. v. Int'l Ins. Co., 612 F.3d 851, 858 (5th Cir. 2010).

The plaintiffs request oral argument on their motion for summary judgment regarding right of first refusal and motion for summary judgment regarding right to withhold consent.  Local Uniform Rule 7(b)(6)(A) provides:

> The court will decide motions without a hearing or oral argument unless otherwise ordered by the court on its own motion, or in its discretion, upon written request made by counsel in an easily discernable manner on the face of the motion or response.

L.U.CIV.R. 7(b)(6)(A).  The Court finds that oral argument would be helpful in this case, given that the parties' motions request declaratory relief and, to some extent, injunctive relief, as well as contract interpretation.  The Court shall therefor hear oral argument on the plaintiffs' motions for summary judgment.  The Court shall also hear oral argument on the defendants' motion for summary judgment and on the plaintiffs' omnibus motion in limine (docket entry 113).

The Court shall therefore set this matter for oral argument and notify the parties of suggested hearing dates.

SO ORDERED, this the 13th day of January, 2016.

/s/ David Bramlette
UNITED STATES DISTRICT JUDGE